**SIGNED THIS: May 30, 2014**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 10-72120 |
| SETH A. WILLS and ) | |
| MELANIE X. WILLS, ) | |
| ) | Chapter 13 |
| Debtors. ) | |

# O P I N I O N

Before the Court is a Motion to Modify Chapter 13 Plan filed by Seth A. Wills. Mr. Wills seeks to decrease his monthly plan payments and thereby reduce the dividend to be paid to unsecured creditors under the plan. For the reasons set forth below, the Motion will be granted in part.

# I. Factual and Procedural Background

Seth A. Wills and Melanie X. Wills filed their voluntary petition under Chapter 13 on July 2, 2010. At that time, they also filed a Chapter 13 plan along with the required schedules, Statement of Financial Affairs, and Official Form 22C—Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("B22C"). Subsequently, the Wills filed Amended Schedules I and J, an Amended B22C, and a First Amended Chapter 13 Plan ("Amended Plan").

On their Amended Schedule I filed on September 28, 2010, the Wills stated that Mr. Wills was earning a monthly gross income of $4740.67 and receiving monthly compensation of $243 from the Department of Veterans Affairs. Mrs. Wills was earning a monthly gross income of $2378.13. From their combined monthly gross income of $7361.80, the Wills itemized $2290.11 in mandatory payroll deductions, resulting in combined monthly net income of $5071.69. On their Amended Schedule J, the Wills listed $5944.10 in monthly expenses and, therefore, stated that their monthly net income after expenses was negative $872.41.

On their Amended B22C, the Wills calculated their "current monthly income"—their average monthly income during the six month period before filing—as $6650.93. Based on these calculations, the Wills' income was higher than the median income for a household of two. On the expense portion of the B22C, the Wills listed $6825.59 in deductions and adjustments, which resulted in negative $174.66 being shown as their monthly disposable income.

The Amended Plan, also filed on September 28, 2010, provided for monthly plan payments of $100 for the first two months and $303 for the remaining fifty-eight months of the plan term, for a total amount of $17,774. From those funds, the Amended Plan provided for payment of the Trustee's compensation, the Wills' attorney's fees, and a priority claim owed to the IRS in the amount of $1145. Although no specific amount was identified, any remaining funds were proposed to be distributed *pro rata* to unsecured creditors. The Amended Plan required the Wills to make their mortgage payments and auto loan payments directly to the creditors. The Amended Plan was confirmed without objection on October 29, 2010.

In June 2013, the Wills divorced, and Mrs. Wills has since remarried and moved to Texas. Pursuant to the Wills' Judgment of Dissolution, Mr. Wills ("Debtor") was awarded the marital residence and ordered to pay the indebtedness thereon as well as the payments to the Chapter 13 Trustee required by the Amended Plan.

On November 8, 2013, the Debtor filed a Motion to Modify Chapter 13 Plan and Amended Schedules I and J. In his Motion to Modify, the Debtor claims that he can no longer make the $303 monthly plan payment and has been unable to pay his monthly bills on time due to the wage deduction for the plan payment. The Motion to Modify proposes reducing the Debtor's monthly plan payment to $25 for the remaining nineteen months of the plan term, thereby reducing the dividend to unsecured creditors on a *pro rata* basis.

On his most recently filed Amended Schedule I, the Debtor shows gross

monthly income of $4957.83 plus his VA benefits of $243 per month. He says that he has $1802.92 in deductions for taxes and benefits resulting in net monthly income of $3397.91. Mrs. Wills' income has been removed entirely from the Amended Schedule I. On his most recently filed Amended Schedule J, Mr. Wills claims $3846.45 in expenses which is $2097.65 less than the expenses claimed at the time of plan confirmation. The reduced expenses are largely attributable to the removal of Mrs. Wills' $743 auto loan payment and to reductions in the food, clothing, and transportation expense categories. Netting the Amended Schedules I and J results in negative monthly net income of $448.54 for the Debtor before he makes the $303 monthly plan payment.

The Trustee objected to the Debtor's Motion claiming that, based on their schedules, the Wills had shown significant negative disposable income at the time of confirmation and that the plan payments included in the confirmed Amended Plan were the result of a compromise he had entered into with the Wills. He also asserts that Mrs. Wills' departure from the household removed more expenses than income from the household budget, resulting in an improved — albeit still negative — financial situation. The Trustee requested that the Motion be denied in its entirety.

After completing discovery, the Trustee and the Debtor entered into a Stipulation. They agreed that the Debtor's deduction for "health benefits pretax" should be $186.14 rather than $299.69, that his VA benefits were $258.83 per month rather than $243, that his "thrift" deduction of $52.17 was a payment on a post-petition retirement loan, that his $13 deduction for spousal health

insurance was taken in error, and that his deductible transportation expenses were $746 per month rather than the $750 he claimed. Making adjustments for all of the stipulated items other than the post-petition retirement loan results in the Debtor having negative monthly income of $302.16 before making his $303 plan payment.

The Debtor was the only witness called to testify at the hearing. He testified that he is employed by the Federal Aviation Administration. Although he lives in Decatur, Illinois, he generally works at the Springfield airport which is about an hour's drive each way. Occasionally he is assigned to work at the Quincy airport which involves a commute of several hours each way. His travel expenses to get to his work assignments are not reimbursed. The Debtor testified that, as a federal employee, he was impacted by both the sequestration in the Spring of 2013 and the government shutdown last Fall. He was furloughed for three days and had at least one paycheck reduced by half from his normal pay. Ultimately, all of his pay was restored, but he experienced some cash flow problems and stress from the situation.

In an effort to reduce expenses, the Debtor has refinanced his home and reduced his monthly mortgage payment by $56.45. However, he also incurred an expense to fix the water pump on his well in the amount of $1750. He financed that expense by borrowing from his "thrift" plan at work and now has the monthly deduction of $52.17 to pay back that loan. He also incurred significant repair expenses for his vehicle over the last year and recently filed a motion to incur debt to purchase a newer vehicle. With the allowance of the motion, the Debtor's

-5-

payment on the newer vehicle is approximately the same as his prior payment, but he is hopeful that the newer vehicle will be more reliable and he will not incur as many repair bills.

The Debtor testified that he cut back on his cable services, reducing the expense by approximately $90 per month when he was concerned about getting paid, but he intends to restore the cable service in the near future. He also stated that, on his Amended Schedule J, he had underestimated his water, sewer, and garbage expenses by about $75. But he acknowledged that he had also overestimated his expenses for telephone, food, clothing, and pet care by about $220. After considering the reduced mortgage payment and the adjustments upward for utilities and downward for his expenses other than cable service, the Debtor remains about $100 short each month before making his plan payment.

The Debtor testified that he had recently experienced some health problems and had been briefly hospitalized. He did not yet know the amount of any uncovered medical expenses. He also testified that during a recent work evaluation, he had been advised that he might be required to receive additional training to continue his employment. He was unsure of the extent of the training and did not know whether the training would be provided by his employer or would have to be undertaken at his own expense.

The Trustee called no witnesses but offered into evidence a *pro forma* B22C which he had prepared to provide a calculation of the Debtor's disposable income if the Debtor had filed a new case in March 2014 as a single person. The Trustee calculated that, under his assumptions, the Debtor would have $409 per month

in disposable income but admitted in his Stipulation that if adjustments were made to use a household size of two for housing and utilities, the disposable income would be reduced to $219. The Debtor objected to the introduction of the *pro forma* B22C into evidence questioning the relevance of the document. The Court stated that it would consider the admissibility of the document along with the other issues to be taken under advisement.

At the conclusion of the hearing, the Court heard arguments from the Debtor and the Trustee. All matters are now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues presented here pursuant to 28 U.S.C. §1334. Issues regarding the modification of a confirmed Chapter 13 plan are core proceedings. *See* 28 U.S.C. §157(b)(2)(A),(L),(O).

## III. Legal Analysis

Modification of a confirmed Chapter 13 plan is governed by the provisions of §1329. 11 U.S.C. §1329. Modifications may be made at any time before the completion of plan payments, and may be proposed by a debtor, the trustee, or the holder of an allowed unsecured claim. *Id.* In a recent decision, this Court discussed the statutory framework for properly prosecuting a motion to modify. *See In re Powers*, 507 B.R. 262, 274 (Bankr. C.D. Ill. Mar. 28, 2014). First, modification of a confirmed plan may only be sought for one of the limited purposes enumerated in §1329(a). *See In re Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994); *In re Walker*, 2010 WL 4259274, at *4 (Bankr. C.D. Ill. Oct. 21, 2010).

Second, a motion to modify must comply with §1329(b)(1), which provides as follows:

> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. §1329(b)(1).

Frequently, as in this case, compliance with §1329(b)(1) turns on whether the proposed modification complies with the confirmation requirements of §1325(a). Regardless of whether plan modification is sought by the trustee, an unsecured creditor, or a debtor, the statutorily-created tests of good faith, best efforts or liquidation analysis, and feasibility apply. 11 U.S.C. §§1325(a)(3),(4),(6), 1329(b)(1); *see In re Wetzel*, 381 B.R. 247, 254-55 (Bankr. E.D. Wis. 2008).

Finally, any proposed modification is subject to notice and an opportunity to be heard by all parties in interest. 11 U.S.C. §1329(b)(2). It is at this stage that a court may exercise its discretion. *See In re Forte*, 341 B.R. 859, 866-68 (Bankr. N.D. Ill. 2005). The movant has the burden of proof by a preponderance of the evidence on all issues. *See Wetzel*, 381 B.R. at 254-55.

Here, the Debtor seeks to reduce the amount of payments to the unsecured creditor class which is one of the specific purposes for which a motion to modify may be brought and allowed. *See* 11 U.S.C. §1329(a)(1). The Debtor states as his reason for requesting modification that his plan is no longer feasible because he cannot make the plan payments and still meet his other monthly obligations. In order to obtain initial plan confirmation or modification of a confirmed plan, a debtor must prove that he or she "will be able to make all payments under the

plan" and thereby establish the feasibility of the proposed plan or modification. 11 U.S.C. §1325(a)(6); *see also* 11 U.S.C. §1329(b)(1). When a previously confirmed plan is no longer feasible, modification is appropriate as long as the proposed modification is offered in good faith and otherwise complies with all statutory requirements. *See In re Davis*, 439 B.R. 863, 869 (Bankr. N.D. Ill. 2010).

Consideration of a proposed plan modification does not involve a resetting or recalculation of disposable income under §1325(b) because that section is specifically not applicable to plan modifications. 11 U.S.C. §1329(b)(1); *see also Powers*, 507 B.R. at 269 (collecting cases). Here, the Trustee has acknowledged that the disposable income test of §1325(b) is not a consideration in ruling on the proposed modification. But changes in a debtor's income and expenses which have occurred over the term of a plan may be relevant in evaluating a proposed plan modification for feasibility and good faith. *See In re Walker*, 2010 WL 4259274, at *10 (Bankr. C.D. Ill. Oct. 21, 2010); *Wetzel,* 381 B.R. at 252. To that end, the Debtor relies heavily on the Amended Schedules I and J which he filed with his Motion to Modify.

As set forth above, the Debtor's Amended I and J show him to be about $300 short each month. After making further adjustments for additional changes he acknowledged in his testimony, he claims to be short about $100 per month before making his plan payment. The Trustee disputed the Debtor's claimed shortfall.

Included on the Debtor's Amended Schedule I is the deduction of $52.17 per month to pay back a loan to his "thrift" plan which he took out to pay the costs

-9-

of repairing the water pump for the well at his home. Although the Trustee presented no evidence about the payment, he argued that debtors are not entitled to incur new debt after filing and then claim that, by reason of the new debt payments, their original plan payments are no longer feasible. Although that argument might generally be reasonable, here the undisputed evidence was that the loan was necessary for the Debtor to have potable water and indoor plumbing at his home. The Debtor did not take out the loan to buy luxury goods or to take a vacation. The Trustee has a duty to review proposed plan modifications and to appear and be heard on the issues. 11 U.S.C. §1302(b)(2)(C). But the Trustee is not required to be strident or unreasonable, and his suggestion that the Debtor acted improperly by borrowing money to make necessary well repairs required for his health and safety must be rejected.

The Trustee also objects to the Debtor's cable service expense on his Amended Schedule J. At the time of confirmation, the Debtor claimed $80 for cable service which included internet access. The Debtor did not separately itemize the internet access part of the bill on his Amended B22C as was allowed at the time at line 37. During the last year, as he became concerned about his budget, the Debtor dropped all cable service except for the internet access he was required to maintain for his employment. This action reduced his cable bill to $28 per month. He testified that he intended to restore some television service and his most recent Amended Schedule J suggests a total monthly charge of $120 for cable service. The Trustee objected to any restoration of service but failed to make a convincing argument that even basic television service is a luxury to which the

Debtor is not entitled.

The Trustee offered into evidence a *pro forma* B22C. The Trustee admits that the B22C form is used to calculate disposable income and that the disposable income calculation set forth in §1325(b) is not relevant to plan modifications. Nevertheless, the Trustee argues that a review of his *pro forma* B22C would be helpful to the Court. The Court disagrees. The *pro forma* B22C was prepared using the assumption that the Debtor filed a new case as a single person in March 2014. But the Debtor actually filed this case in July 2010 with his ex-wife who is still a co-debtor. The Debtor had made over three years of payments before seeking to modify his confirmed plan and is entitled to have his Motion to Modify decided based on the provisions of §1329. Having closely reviewed the Trustee's *pro forma* B22C, the Debtor's objection to its admissibility must be sustained. The document is not relevant to the issues before this Court. *See Davis*, 439 B.R. at 866-69.

The Debtor claims that he has a shortfall each month, making his plan no longer feasible. But the Trustee argues that the Debtor and his ex-wife had a much greater shortfall when the case was filed. In fact, the Trustee asserts that the departure of the co-debtor ex-wife improved the Debtor's financial picture because the reduction in expenses shown on the recently filed Amended Schedule J exceeds the reduction in income on the Amended Schedule I. Indeed, when the case was filed, the Debtor's household budget disclosed overspending of $800 per month. And a significant amount of the scheduled unsecured debt was from credit cards presumably used to fund the overspending. But it does not appear that the Debtor and his ex-wife continued to overspend once the case was filed and the

credit cards were cancelled. No additional unsecured debt has been disclosed, and the Debtor's current budget does not show any credit card payments.

The Debtor's household budget at the time of filing included excess amounts for food, clothing, cigarettes, personal care, and entertainment. The cuts in spending reflected in the newly-filed Amended Schedules I and J most likely occurred in 2010 rather than when the Wills separated and divorced. Also the Wills' Amended B22C filed in September 2010 suggests that they were much closer to break-even than their Amended Schedules showed. The Amended B22C showed a negative $176 in disposable income but appears not to have included the Debtor's $243 in VA benefits. If the VA benefits had been included, the Wills would have had positive disposable income of $67 per month. And although no specific amount is set forth in their Amended Plan, it appears that over $12,000 was included to pay unsecured creditors. The Trustee claims that the amount of the plan payments was the result of a compromise. This suggests that although he did not formally object to the Amended B22C at the time, the Trustee must have identified some potential objections he shared with the Wills and their attorney. The Wills agreed to the payments which indicates their belief that the payments could be made and the Amended Plan was feasible.

The Court cannot find that the Debtor's divorce put him in an improved financial position. To the contrary, his ex-wife was making the $303 plan payment through a deduction from her wages, and the Debtor had to take on that payment after the divorce. The divorce appears to have had a significant negative impact on the Debtor's financial situation and the ongoing feasibility of the Amended

Plan.

The Debtor's current projected $100 per month shortfall is based on what he claims are reasonable amounts to spend each month for his household. But there is no evidence that he is actually spending more than his income each month. To the contrary, the Debtor, acting in good faith, has taken steps to reduce spending by refinancing his mortgage, obtaining a more reliable vehicle, and otherwise cutting back. But he still has discretionary amounts for entertainment, cigarettes, and personal care items in the budget which suggests that, although his current plan payment of over $300 per month may no longer be feasible, a reduced payment higher than his proposed $25 per month is appropriate.

The Court will grant the Debtor's Motion to Modify in part and reduce his monthly payments to $150 effective with the June 2014 payment. The dividend otherwise payable to unsecured creditors pursuant to the Amended Plan will be reduced accordingly. The amount here was determined by considering all of the Debtor's claimed budget expenses and reducing the expenses for entertainment, cigarettes, and personal care items. The Court also concluded that although basic television service is not a luxury, the Debtor may not need to spend the full amount he proposes to restore basic cable service. The Debtor cannot claim that virtually no plan payment is feasible and yet maintain these discretionary items in his budget. The Trustee is correct that the proposed $25 per month payment is not meaningful and would cause accounting and distribution issues and problems. The reduced payment is allowed only on a going-forward basis and not retroactively. Although the Motion to Modify was pending for a number of months

before the parties were ready for an evidentiary hearing, it does not appear that either party caused unnecessary delay. The Trustee was entitled to undertake some discovery before the hearing and acted promptly in that regard.

As set forth above, the Debtor testified at the hearing about his health problems and some potentially required training related to his employment. The testimony was vague, and the Debtor provided no specifics about either issue which showed any actual impact on his monthly budget. Accordingly, the decision here is without prejudice to revisiting those issues if either ultimately results in a change in the Debtor's income or expenses.

### IV. Conclusion

The Debtor's Motion to Modify will be granted in part. The decision is made based on the required statutory analysis. 11 U.S.C §1329. The Court again rejects the Trustee's position that Chapter 13 plan modifications should be judged solely on the equities. *See Powers*, 507 B.R. at 270-73. The express provisions of the statute provide the appropriate guidance to decide the matters here.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###